IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | |
|---|---|
| In re: | Chapter 11 |
| **ACE MOTOR ACCEPTANCE CORPORATION,** | Case No. 18-30426 |
| Debtor. | |
| **THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ACE MOTOR ACCEPTANCE CORP., ON BEHALF OF ACE MOTOR ACCEPTANCE CORP., Debtor-in-Possession,** | |
| Plaintiff, | |
| v. | Adversary Proceeding No.: 19-03019 |
| **RUSSELL E. ALGOOD, as the Trustee of the Russell E. Algood Revocable Trust dated May 15, 2013, MALVIN L. ALGOOD, as the Trustee of the Malvin L. Algood Living Trust, MALVIN L. ALGOOD, as the Trustee of the Janet G. Algood Living Trust, JOHN G. ALGOOD, as the Trustee of the John G. Algood Living Trust, STEVEN A. COOK, SHIRLEY A. COOK KARCH, as the Trustee of the Shirley A. Cook Declaration of Trust dated April 9, 2013, JEFFREY ALGOOD, STUART ALGOOD, PAULINE WILLIAMS, and DONALD EUGENE BROWN,** | |
| Defendants. | |

**BRIEF IN SUPPORT OF TRUST DEFENDANTS'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

The Russell Edward Algood Revocable Trust Dated May 15, 2013 (the "Russell Trust"), the Janet G. Algood Living Trust (the "Janet Trust"), the John G. Algood Living Trust (the "John Trust"), and the Malvin L. Algood Living Trust (the "Malvin Trust," and collectively with the Russell Trust, Janet Trust, and John Trust, the "Movants") submit this brief (the "Brief") in

MWH: 10412.001; 00021242.5

support of their *Motion for Summary Judgment* (the "Motion") filed in this Court on October 11, 2019. [Doc. 49]. In support of the Motion, the Movants show the Court the following:

### FACTS

The Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Court on March 15, 2018 (the "Petition Date"). The Debtor continues in possession of its properties and the management of its business as a debtor in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. On May 10, 2018, the Court entered an Order appointing an Official Committee of Unsecured Creditors (the "Committee"). [Base Case Doc. 65]. The Movants each timely filed proofs of claim in this case asserting secured claims against the Debtor's estate (collectively, the "Algood Claims"). [*See* Base Case Claims Register Nos. 25-1, 26-1, 28-1, & 29-1].

The Algood Claims each arise out of loan transactions between the Movants and the Debtor, some of which date back more than 20 years. Beginning in 1998, the Debtor and the Movants entered into various loan transactions (collectively, the "Algood Loans") to fund the Debtor's operations. A detailed history of these loan transactions and their treatment by the Debtor is recounted in the declarations of Russell E. Algood (the "Algood Declaration"), [Doc. 50], and William A. Barbee (the "Barbee Declaration"), [Doc. 52], filed contemporaneously with the Motion. In summary, written agreements or promissory notes evidenced each of the Algood Loans. Each loan was secured by the Debtor's assets, and the Movants filed multiple financing statements to perfect these security interests. The Debtor accounted for each of the Algood Loans as debt, rather than equity, in its books and records. The Debtor listed the loans as debts on its tax returns and in its audited financial statements. The Debtor made regular interest payments to the Movants, as provided by the loan agreements, and issued Form 1099 interest

income statements to the individual Movants. While the Algood Loans were subordinated by agreement to the Debtor's senior secured lender, they were not subordinated to any other claims against the Debtor.

On March 20, 2019, the Committee filed the above captioned adversary proceeding (the "Adversary Proceeding") asking the Court to recharacterize the Algood Loans as contributions of equity. [Doc. 1]. Despite the formalities of the documents establishing the debt relationships between the Debtor and the Movants, the Committee argues that the loan agreements lack the characteristics of actual lending transactions. Instead, the Committee alleges that the extensions of funds to the Debtor from the Movants were "understood and treated" as equity investments, not loans. [Doc. 1 ¶ 57]. On October 11, 2019, the Committee filed a motion for summary judgment. [Doc. 55].

## ARGUMENT

A party is entitled to summary judgment if the evidence shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (citations and quotations omitted). A "dispute about a material fact is 'genuine'" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. (emphasis added). Therefore, in order to defeat a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id*. As detailed below, all the evidence in the present case shows that the Algood Loans are actual debt transactions rather than equity contributions. Moreover, the Committee has failed to present any evidence that would allow a reasonable jury to conclude otherwise. Accordingly, the Movants are entitled to judgment as a matter of law.

In *Fairchild Dornier GmbH v. Official Comm. of Unsecured Creditors (In re Dornier Aviation (N. Am.), Inc.)* (hereafter *Dornier*), the Fourth Circuit Court of Appeals adopted a list of eleven factors for bankruptcy courts to consider in determining whether a debt should be recharacterized as an equity contribution. Those factors include:

> (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advance were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments.

453 F.3d 225, 233 (4th Cir. 2006) (quoting *Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.)*, 269 F.3d 726, 749-50 (6th Cir. 2001) (hereafter *AutoStyle*)).

In a recharacterization analysis, "'[n]one of these factors is dispositive and their significance may vary depending upon the circumstances.'" *Id.* at 234 (quoting *Sender v. Bronze Group, Ltd. (In re Hedged-Invs. Assocs., Inc.)*, 380 F.3d 1292, 1298-99 (10th Cir. 2004)). Rather, these factors "must be considered in light of the entire relationship of the parties, with particular emphasis on [the] parties' intent at the initial funding." *United States v. State St. Bank & Tr. Co.*, 520 B.R. 29, 74-75 (Bankr. D. Del. 2014).

The application of these various factors "devolve[s] to an overarching inquiry: the characterization as debt or equity is a court's attempt to discern whether the parties called an instrument one thing when in fact they intended it as something else." *Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.)*, 432 F.3d 448, 456 (3d Cir. 2006). Thus, "[t]he 'ultimate exercise' in evaluating any recharacterization claim 'is to ascertain the intent of the

parties.'" *In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 566 (Bankr. S.D.N.Y. 2016) (quoting *Weisfelner v. Blavatnik (In re Lyondell Chemical Co.)*, 544 B.R. 75, 103 (Bankr. S.D.N.Y. 2016)). The parties' "intent may be inferred from what the parties say in their contracts, from what they do through their actions, and from the economic reality of the surrounding circumstances." *In re SubMicron Sys. Corp.*, 432 F.3d at 456. Ultimately, the factors employed by the *Dornier* court are aimed at helping courts decide whether "the party infusing funds does so as a banker (the party expects to be repaid with interest no matter the borrower's fortunes; therefore the funds are debt) or as an investor (the funds infused are repaid based on the borrower's fortunes; hence, they are equity)." *Id.*

Application of the *Dornier* factors to the uncontested evidence in this case shows that the parties always intended for the Algood Loans to be debt transactions, that the obligations were in fact treated as debt rather than equity, and that the Movants are entitled to the entry of judgment regarding the proper characterization of their claims.

**1) Names given to instruments evidencing the indebtedness**

The first *Dornier* factor looks at the "names given to the instruments, if any, evidencing the indebtedness; . . ." *Dornier*, 453 F.3d at 233. A complete "absence of notes or other instruments of indebtedness is a strong indication that the advances were capital contributions and not loans." *Drake v. Franklin Equip. Co. (In re Franklin Equip. Co.)*, 416 B.R. 483, 511 (Bankr. E.D. Va. 2009) (quoting *AutoStyle*, 269 F.3d at 750).

However, even the failure to create documents evidencing the loans is, alone, insufficient grounds to recharacterize debt as equity. *See In re SubMicron Sys. Corp.*, 432 F.3d at 458 (quoting 291 B.R. 314, 326 (D. Del. 2003)) (upholding the district court order which found that "'the fact that notes were generated for some fundings and not others is not sufficient, in and of

itself, to recharacterize the 1999 fundings as equity.'"); *see also In re Internet Navigator, Inc.*, 289 B.R. 133, 137-38 (refusing to recharacterize debt as equity even where there were no notes evidencing the debt). Moreover, "courts have universally held that a substantial degree of informality is permissible in the context of the operation of a small, closely held corporation, and informality of little consequence." *Cent. Coops. v. Irwin (In re Colonial Poultry Farms)*, 177 B.R. 2391, 303-04 (Bankr. W.D. Mo. 1995) (quoting *Connors v. Peles*, 724 F. Supp. 1538, 1566 (W.D. Pa. 1989)).

The documents memorializing the Algood Loans to the Debtor speak for themselves and show that the challenged transactions were actual debt, rather than equity contributions. As detailed in the Algood Declaration and shown by the exhibits thereto, the loan transactions were memorialized with written documents entitled either "Promissory Notes" or "Loan Agreements." [Doc. 50 and Doc. 51, Exs. A, E, G, I-J, N, Q, U-W, & Y-Z]. Moreover, several of the loan transactions were further memorialized with Commercial Security Agreements. [Doc. 51, Exs. B, K, O, & R]. Applying the first *Dornier* factor to the uncontested evidence in the record establishes that the Debtor and the Movants intended the challenged transactions to be actual loans rather than contributions to equity.

**2) Fixed maturity date and payment schedule**

The second *Dornier* factor considers whether a loan has "a fixed maturity date and schedule of payments; . . ." 453 F.3d at 233. "The absence of a fixed maturity date and a fixed obligation to repay is an indication that the advances were capital contributions and not loans . . . ." *AutoStyle*, 269 F.3d at 750. In contrast, where the "holder of a note has the right to enforce payment, then that characteristic favors finding genuine indebtedness." *In re Va. Broadband, LLC*, 521 B.R. 539, 571-72 (Bankr. W.D. Va. 2014). Importantly, courts have

clearly ruled that this factor does not justify recharacterizing loans payable on demand as equity contributions. Rather, "the use of demand notes along with a fixed rate of interest and interest payments is more indicative of debt than equity." *AutoStyle*, 269 F.3d at 750; *accord In re Va. Broadband, LLC*, 521 B.R. at 572 (observing that notes granted the creditor "the right to enforce payment on demand.").

The Committee's argument places great emphasis on the fact the Algood Loans do not contain fixed maturity dates. However, settled case law demonstrates that this emphasis is misguided. The Algood Loans were fully enforceable loan transactions payable on the demand of the lenders, as were the loans challenged in *AutoStyle*, *supra*. Therefore, this factor does not support recharacterizing the Algood Loans as equity contributions. Instead, the use of valid and enforceable demand notes illustrates the Debtor and the Movants intended the Algood Loans to evidence actual debt rather than equity contributions.

**3) Fixed Interest Rate:**

The third *Dornier* factor looks at whether a transaction calls for the payment of a "fixed" rate of interest. 453 F.3d at 233. An interest rate is "fixed" when it is "payable periodically at rates that (although fluctuating) are typical in the marketplace for debt instruments." *Official Comm. of Unsecured Creditors v. Highland Capital Mgmt., L.P. (In re Moll Indus.)*, 454 B.R. 574, 582 (Bankr. D. Del. 2011). As one bankruptcy court explained:

> When a transaction is intended as equity, there is usually no interest paid or interest payments are sporadic because the investor is more interested in seeing the value of its investment grow rather than receiving periodic payments. In reviewing this factor, therefore, the Court considers whether the transaction is structured as debt (with periodic repayment of interest at least) rather than equity (where repayment is deferred).

*Id*.

All of the Algood Loans have stated interest terms. As the Barbee Declaration details, some of the Algood Loans have fixed interest rates while the remainder specify variable interest rates, which are expressed as a maximum rate of interest adjustable at the mutual agreement of the lender and the Debtor. [Doc. 52, ¶ 42]. Additionally, "the Debtor's general ledger and internal interest calculations show that the Debtor consistently paid monthly interest on the Algood Loans." [Doc. 52, ¶ 43]. Moreover, the Barbee Declaration illustrates that those loans bearing variable rates were paid rates of interest that remained fixed for months or even years at a time. [Doc 52, ¶ 43-44 & Ex. 6]. Subjecting the uncontested facts regarding the Algood Loans to analysis using the third *Dornier* factor shows again that the Algood Loans were debt transactions rather than contributions to equity.

**4) Source of Repayments**

The fourth *Dornier* factor looks at the source of repayments of the notes. 453 F.3d at 233. Where "the expectation of repayment depends solely on the success of the borrower's business, the transaction has the appearance of a capital contribution." *AutoStyle*, 269 F.3d at 751. In practice, though, "all extensions of credit depend on a company's success, and that risk alone—without more—does not indicate that they are capital contributions." *United States v. State St. Bank & Tr. Co.*, 520 B.R. 29, 76 (Bankr. D. Del. 2014). To support the recharacterization of a loan to equity requires something more. As the Bankruptcy Court for the Eastern District of Virginia explained:

> Had the Line of Credit Note been payable only from profits of the Debtor, it would in that respect resemble a dividend and be an indicia of a capital contribution. The repayment of the Line of Credit Note was, and is, secured by a first deed of trust on the principal manufacturing facility of the Debtor, and, while doubtless originally intended to be an alternative source of repayment, nonetheless now is the only source of repayment of the Line of Credit Note. . . . All loans to a commercial borrower are initiated with the expectation they will be

> repaid from the earnings of the borrower, with the collateral securing the loan serving as a secondary source of repayment should earnings be insufficient to regularly pay the indebtedness. Even if the Debtor could only repay the Line of Credit Note by surrendering the collateral, such circumstance does not mean the Line of Credit Note was not a loan.

*In re Franklin Equip. Co.*, 416 B.R. at 513.

The Algood Loans contain no terms tying their repayment to the Debtor's profitability. Indeed, the Debtor made interest payments on the Algood Loans even in those years when it suffered diminished profits. [Doc. 52, ¶ 47]. Moreover, just as in the *Franklin Equipment* case, the Algood Loans were secured by substantially all of the Debtor's assets, and thus contained "a secondary source of repayment should earnings be insufficient . . . ." *See* 416 B.R. at 513. Taken together, applying this *Dornier* factor to the undisputed facts indicates the Algood Loans were debt obligations rather than contributions to equity.

**5) Capitalization**

While "[t]hin or inadequate capitalization is strong evidence that the advances are capital contributions . . . ." *AutoStyle*, 269 F.3d at 751, "undercapitalization alone is not sufficient to invoke recharacterization." *In re Franklin Equip. Co.*, 416 B.R. at 513. In addressing this factor, the Bankruptcy Court for the Eastern District of Virginia applied a two-part test to determine whether a company was adequately capitalized. It found a company undercapitalized in the following circumstances:

> "(1) Capitalization is inadequate if, in the opinion of a skilled financial analyst, it would definitely be insufficient to support a business of the size and nature of the bankrupt in light of the circumstances existing at the time the bankrupt was capitalized;

> (2) Capitalization is inadequate if, at the time when the advances were made, the bankrupt could not have borrowed a similar amount of money from an informed outside source."

*In re Franklin Equip. Co.*, 416 B.R. at 515-16 (quoting *Benjamin v. Diamond (In re Mobile Steel Co.)*, 563 F.2d 692, 702-03 (5th Cir. 1977)).

The Debtor was adequately capitalized at the times it entered into the Algood Loans under both of these tests. First, the Barbee Declaration illustrates that the Debtor's cash flows were sufficient to support the payment of interest on the Algood Loans, [Doc. 52, ¶ 48], and that the net value of its assets was at all times greater than its liabilities. [Doc. 52, ¶¶50-51]. Second, even the Committee admits that the Debtor was able to borrow money from "informed outside sources" at the time it entered the Algood Loans. [Doc. 1, ¶¶ 49 & 62(e); Doc. 55 at 16]. All evidence of the Debtor's capitalization thus demonstrates that the Debtor was adequately capitalized at the time of the Algood Loans. Accordingly, this *Dornier* factor also supports the conclusion that the Algood Loans were treated as debt rather than equity.

**6) Identity of Interests**

The sixth *Dornier* factor is primarily concerned with whether the purported loans from insiders are made in proportion to their membership interests. When "stockholders make advances in proportion to their respective stock ownership, an equity contribution is indicated. On the other hand, a sharply disproportionate ratio between a stockholder's percentage interest in stock and debt is indicative of bona fide debt." *AutoStyle*, 269 F.3d at 751 (citations omitted); *accord In re Va. Broadband, LLC*, 521 B.R. at 574 ("a disproportionate advance weighs in favor of an advance as a loan."). Likewise, where "as a condition of advancing funds, the lending party increases the extent of participation in management, obtains a larger percentage of membership, or receives additional voting rights, a bankruptcy court is likely to determine that

the advance is an equity contribution and recharacterize the debt." *In re Va. Broadband, LLC*, 521 B.R. at 572.

The uncontested evidence shows the lenders did not make the Algood Loans in exchange for control of the Debtor's management or in proportion to their equity interests.  First, the Debtor classified the Algood Loans separately from the equity accounts carried on its balance sheet. [Doc. 51, ¶ 11; Doc. 52, ¶ 31].  Second, the applicable lenders did not make the Algood Loans in the same proportion as their equity interests in the Debtor. [Doc. 51, ¶ 12; Doc. 52 ¶ 38 & Ex. 5].  In fact, neither Malvin Algood nor the Malvin Trust even held any shares in the Debtor at the time they first extended financing. [Doc. 52, Ex. 5].  Third, while the Debtor periodically distributed profits to its shareholders in proportion to their equity interests, the interest paid pursuant to the Algood Loans bore no relationship to the equity distributions. [Doc. 51, ¶¶ 12-13; Doc. 52, ¶ 39].  Finally, the Debtor did not cede additional management or control rights to the lenders in exchange for the Algood Loans. [Doc. 52, ¶ 40; Doc. 51, ¶ 14].  Applying this *Dornier* factor to the uncontested facts leads to the conclusion that the Movants and the Debtor intended that the Algood Loans were debt transactions instead of equity funding.

**7) Security**

The seventh factor identified by *Dornier* as applicable to a recharacterization analysis is "the security, if any, for the advances; . . . " 453 F.3d at 233.  Generally, when security is given for a loan, courts are likely to find that the transaction constitutes an actual debt transactions rather than an equity contribution. *See AutoStyle*, 269 F.3d at 752 ("The absence of a security for an advance is a strong indication that the advances were capital contributions rather than loans.").  However, even an unsecured loan can be an actual loan.  As the Bankruptcy Court for the Southern District of New York explained:

> What the *AutoStyle* court could have said (and in this Court's view, should have said) was that when loans are made on an unsecured basis, they are much easier to recharacterize than secured loans, and deserve higher scrutiny; the additional formality associated with secured loans, and the need to perfect their security interests, tends to make secured loans particularly difficult to recharacterize. But bona fide loans have been made on an unsecured basis for decades, if not centuries (e.g., when insurance companies made private placement loans on an unsecured basis), and the fact that they were made without security cannot be regarded as a "strong indication" that loans documented as such were really "capital contributions rather than loans."

*Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 544 B.R. 75, 98 (Bankr. S.D.N.Y. 2016).

The Algood Loans were all fully secured by liens on substantially all of the Debtor's assets. [*See* Doc. 50 & Doc. 51]. Not only did the promissory notes or loan documents contain language granting the applicable lender security interests, each lender took steps to perfect those interests by formally filing financing statements.[1] [Doc. 51, Exs. C-D, H, L, P, S, T, & X]. Accordingly, the uncontroverted evidence demonstrates that the Debtor and the Movants intended to treat the Algood Loans as secured debts rather than as capital contributions.

**8) Availability of Outside Funding**

In a recharacterization analysis, "the fact that no reasonable creditor would have acted in the same manner is strong evidence that the advances were capital contributions rather than loans." *AutoStyle*, 269 F.3d at 752. Conversely, the availability of funding from non-insider lenders is strong evidence that a challenged transaction is actual debt, rather than equity. *See In re Franklin Equip. Co.*, 416 B.R. at 516 (declining to recharacterize debt as equity where non-insider made a $5 million dollar line of credit available to the debtor at roughly the same time as the insider debt).

---

[1] The filing of financing statements gave actual notice to every other creditor of the Debtor of the existence and priority of the Algood Loans.

The Committee readily admits that the Debtor was able to and in fact did obtain outside financing at the time it also entered the Algood Loans. [Doc. 1 ¶¶ 49 & 62(e); Doc. 55 at 16]. Additionally, as the Barbee Declaration demonstrates, the Debtor's cash flows and the value of its assets were always sufficient to pay the Algood Loans, in addition to all of the Debtor's senior debt. [Doc. 52]. The Debtor's ability to find outside financing, as well as the value of its assets, further support that the Algood Loans were loan transactions rather than mere equity contributions.

**9) Extent of Subordination to Claims of Outside Creditors**

The *Dornier* factors also look at "the *extent* to which the advances were subordinated to the claims of outside creditors; . . ." *Dornier*, 453 F.3d at 233 (emphasis added). Where insiders agree to subordinate their loans to "claims of *all* other creditors," this "indicates that the advances were capital contributions and not loans." *AutoStyle*, 269 F.3d at 752 (emphasis added). By contrast, the *AutoStyle* court recognized that subordination of loans only to a senior lender participating in a credit facility was indicative of a true debt transaction, rather than an equity contribution. *See id*.

It is undisputed that the debtor maintained a substantial line of credit with a bank throughout its existence, and that the Algood Loans were subordinated to the debt of the Debtor's senior secured lender. However, it is similarly undisputed that the Algood Loans were *not* subordinated to all of the Debtor's other liabilities. [Doc. 51, ¶ 16, & Doc. 52, ¶ 32]. Thus, as the *AutoStyle* court observed, this factor tends to indicate that the parties intended the Algood Loans to be debt transactions—not equity infusions.

**10) Use of Funds to Obtain Capital Assets**

A company's use of insider loan funds "to meet the daily operating needs of the corporation, rather than to purchase capital assets, is indicative of bona fide indebtedness." *AutoStyle,* 269 F.3d at 752. The Committee has made no substantiated allegation that the Debtor used the proceeds of the Algood Loans to obtain capital assets, or for any purpose other than ordinary operating expenses. On the other hand, the Movants' evidence establishes that the proceeds of the Algood Loans were always used to meet the Debtor's operating expenses and debt service payments. [*See*, *e.g.*, Doc. 50, ¶¶ 63; & 66]. Applying this factor to the uncontested facts surrounding the Algood Loans again illustrates that the disputed transactions were actual loans rather than capital contributions.

**11) Presence of Sinking Fund**

The final *Dornier* factor asks whether a sinking fund was established to provide repayment of the challenged transactions. 453 F.3d at 233; see also *AutoStyle*, 269 F.3d at 753 ("The failure to establish a sinking fund for repayment is evidence that the advances were capital contributions rather than loans."). However, courts have recognized that "it is unusual in commercial transactions involving lines of credit for any non-insider lender to require establishment of a sinking fund, and particularly so where the borrower is a smaller, non-publicly traded entity . . . ." *In re Franklin Equip. Co.*, 416 B.R. at 518. Moreover, this factor carries little weight where the company did not usually "utilize sinking funds for what it does consider genuine indebtedness." *In re Va. Broadband, LLC*, 521 B.R. at 572. In such a circumstance, failure to use a sinking fund is "in line with what appears to be [the company's] standard operating procedure dealing with debt." *Id*.

The Debtor did not establish a sinking fund or sinking funds to repay the Algood Loans. However, this was entirely consistent with its standard operating procedure, as the Debtor never maintained a sinking fund in relation to any of its debt. [Doc. 50, ¶ 81]. Accordingly, this *Dornier* factor provides no justification to recharacterize the Algood Loans as equity contributions rather than debt.

**12) Additional Indicia of Intent:**

Finally, courts may also rely on additional "indicia of intent" to determine whether to recharacterize debt as equity. *See, e.g.*, *Weisfelner*, 544 B.R. at 102 ("[T]he Court can, and should, look to any indicia of intent beyond what the *Roth Steel* and *AutoStyle* factors themselves suggest, and to the entirety of the facts and circumstances surrounding the transaction, when such are helpful in gauging intent."). One such indicator that is particular instructive is how the debtor treated the challenged loans in its books and records. *See In re Va. Broadband, LLC*, 521 B.R. at 575 (finding it "informative" that the debtor treated the insider claims as debt on its corporate financial records).

For over *20 years*, the Debtor has consistently accounted for the Algood Loans as debt obligations on its books and records. As the Barbee Declaration details, the Debtor uniformly treated the Algood Loans as debts, which were accounted for separately from equity on its balance sheets. [Doc. 52, ¶ 31]. It listed the Algood Loans as "Notes Payable" accounts in its accounting records. [Doc. 52, ¶ 33]. It accounted for the Algood Loans as debt on its audited and reviewed financial statements prepared by independent accountants. [Doc. 52, ¶ 34]. The Debtor further showed the interest it paid on the Algood Loans on its general ledger. [Doc. 52, ¶ 42]. In short, every single one of the Debtor's financial records over a 20-year period treated the Algood Loans as debt obligations rather than equity contributions, and the Committee has not produced a

scintilla of actual evidence suggesting otherwise. Accordingly, the uncontested facts establish that the Algood Loans were debt transactions and not equity contributions.

## CONCLUSION

For the reasons set forth above, the Movants submit that there are no genuine issues of material fact related to the proper characterization of the Algood Loans. Every piece of uncontested evidence supports the conclusion that the Movants and the Debtor always intended the Algood Loans to be liabilities of the Debtor instead of equity contributions. The Committee has presented no actual evidence otherwise. The Court should therefore grant summary judgement in favor of the Movants and affirm as a matter of law that the Algood Loans represent liabilities of the Debtor rather than equity contributions.

Dated: Charlotte, North Carolina
October 15, 2019

**MOON WRIGHT & HOUSTON, PLLC**

*/s/ Richard S. Wright*
Richard S. Wright (NC Bar No. 24622)
Caleb Brown (NC Bar No. 41131)
121 W. Trade Street, Suite 1950
Charlotte, North Carolina 28202
Telephone: (704) 944-6560
Facsimile: (704) 944-0380
*Counsel for the Movants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date copies of the foregoing *Brief in Support of Trust Defendants' Motion for Summary Judgment* was served by electronic notification on those parties registered with the United States Bankruptcy Court, Western District of North Carolina ECF system to receive notices for this case.

Dated:  Charlotte, North Carolina
October 15, 2019

**MOON WRIGHT & HOUSTON, PLLC**

*/s/ Richard S. Wright*
Richard S. Wright (Bar No. 24622)
Caleb Brown (NC Bar No. 41131)
121 W. Trade Street, Suite 1950
Charlotte, North Carolina 28202
Telephone:  (704) 944-6560
Facsimile:  (704) 944-0380
*Counsel for the Movants*